HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES HARDIE BUILDING PRODUCTS INC., a Nevada Corporation,

Plaintiff,

v.

GOOD INC., a Washington Corporation,

Defendant.

CASE NO. C13-05247-RBL

ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

(Dkt. #14)

THIS MATTER is before the Court on Defendant's motion to compel arbitration (Dkt. #14). The parties entered into two service agreements to govern Defendant Good's silica crushing at Plaintiff Hardie's silica mines. Each agreement contained an arbitration clause. Good concedes that it overbilled Hardie for silica and agreed to make up the shortage. After the agreements expired, Good continued to crush silica for Hardie. Hardie claims Good continued to overbill it and breached the agreement to make up the previous shortage. Hardie sued for breach of the agreement to make up the shortage, and for fraud and violations of the Washington Consumer Protection Act. Hardie did not sue for breach of the expired agreements.

Good now moves to compel arbitration, arguing that the two service agreements survived their expiration. Hardie argues that the agreements expired, and that their arbitration clauses do

not govern its claims. Because the arbitration clauses encompass all of Hardie's claims, Good's motion to compel arbitration is GRANTED.

## I. BACKGROUND

Good began crushing silica for Hardie at Hardie's Washington mine, Scatter Creek, in 2001. Compl. ¶9. In 2006, Hardie asked Good to crush silica at one of its Nevada mines, Stone Corral. (Dkt. #18 at 3). In 2006 and 2008, the parties entered into service agreements to govern their relationship regarding silica crushing at Stone Corral and Scatter Creek, respectively. The agreements contained identical arbitration clauses mandating that disputes relating to the agreements be arbitrated in Orange County, California:

> "Any dispute, controversy, or claim arising out of or relating to this Agreement or a breach thereof shall be exclusively and finally resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, except as otherwise provided in this agreement."

2008 Service Agreement, Art. 13, Dispute Resolution, Dkt. #16-1.

Each agreement also contained a survival clause articulating that the dispute resolution clause survives the termination of the agreement:

> "Except as otherwise provided, the provisions of Articles 3 (Term; Termination; Survival) 4 (Insurance), 6 (Taxes), 7 (Indemnification), 11 (Confidentiality, 12 (Maintenance of Records), 13 (**Dispute Resolution),** and 14 (Miscellaneous) shall survive any expiration or termination of this Agreement."

2008 Service Agreement, Art. 3.4, Term; Termination; Survival, Dkt. #16-1.

The 2006 service agreement governed silica crushing at Stone Corral and expired in 2009. The 2008 agreement governed silica crushing at Scatter Creek and expired in 2011. Hardie alleges that Good engaged in a scheme of overbilling for his silica crushing services at both mines. Compl. ¶14. In 2009, after the Stone Corral service agreement expired, Good

admitted that it overbilled Hardie at Stone Corral between May 2006 and November 2007. Dkt. #1-1. Good signed an agreement promising to make up the shortage at Stone Corral by crushing silica at Hardie's other Nevada mine, Lucky Boy (the "2009 Agreement"):

> "Good, Inc. hereby acknowledges a shortage of 90,000 tons of material crushed at the Stone Corral mine in Nevada between May 2006 through November 2007. The contractor hereby also agrees to make up this shortage at the Lucky Boy mine in Nevada for the incremental cost difference between the two locations."

2009 Agreement, Dkt. #1-1.

After both the Stone Corral and Scatter Creek agreements expired, Good continued crushing silica for Hardie, and they entered into negotiations to renew the contracts. Dkt. #14 at 6. Hardie insisted that the jurisdiction for the new agreement remain in California because its legal office is located there. *Id*. The draft agreement also contained an arbitration clause. *Id*. at 7. Ultimately, the parties never reached agreement and did not sign any new contracts.

Nevertheless, Good continued crushing silica for Hardie, and Hardie contends that Good continued to overbill it at Scatter Creek and Lucky Boy between 2010 and 2012. Compl. ¶20. In December 2012, a Hardie employee approved a $100,000 payment advance to Good for work that Good intended to do at Hardie's mines. *Id*. ¶24. Hardie contends that Good made false representations that it would do crushing in the amount of $100,000 in order to fraudulently obtain the money. *Id*. Good and Hardie continued their business relationship until February 2013.

Hardie brought suit for fraud occurring in the fall of 2012 for Good's overbilling at Scatter Creek. Hardie also claims that Good breached the 2009 Agreement by failing to make up

the silica shortage from the Stone Corral mine in 2006 – 2007. Hardie further contends that Good's actions violated of the Washington Consumer Protection Act.

Good moves to compel arbitration on grounds that the arbitration clauses of service agreements survive their expiration. Hardie responds that the two agreements do not apply to his claims because he alleges only breach of the 2009 Agreement. Hardie concedes that any claims regarding overbilling prior to the expiration of the agreements are subject to arbitration. It emphasizes, however, that it is consciously not bringing any such claims.

## II. DISCUSSION

### A. Standard

Under the Federal Arbitration Act, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citation omitted). If the answer to both questions is 'yes,' then "the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* By its own terms, the Act "leaves no place for the exercise of discretion by a district court," instead it mandates "that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).

The Ninth Circuit has stated that "the most minimal indication of the parties' intent to arbitrate must be given full effect..." *Rep. of Nicaragua v. Std. Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991) (citations omitted). It is well established "that where the contract contains an arbitration clause, there is a presumption of arbitrability," particularly where the clause is broad.

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Indeed, "doubts should be resolved in favor of coverage." *Id*. (internal quotations omitted).

In interpreting an arbitration clause, the intentions of the parties as expressed in the agreement control, but "those intentions are generously construed as to issues of arbitrability." *W.A. Botting Plumbing and Heating Co. v. Constructors-Pamco*, 47 Wn. App. 681, 684 (1987) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985)).

In order to rule that a particular dispute is not arbitrable under an arbitration agreement "[t]he court must be able to say 'with positive assurance' that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ML Park Place Corp. v. Hedreen*, 71 Wn. App. 727, 739 (1993) (citing *Local Union No. 77, Int'l Bhd. of Elec. Workers v. Pub. Util. Dist. No. 1, Grays Harbor County*, 40 Wn. App. 61, 65 (1958)).

**B. Is there a Valid Agreement to Arbitrate?**

There is. The 2006 and 2008 service agreements contained clear arbitration clauses for any claims "relating to" Good's silica crushing at Stone Corral and Scatter Creek. This language evidences a "broad" arbitration clause. *See AT&T Techs Inc.*, 475 U.S. at 650 (1986) (holding an arbitration clause broad that provided for arbitration of "any difference arising with respect to the interpretations of this contract or the performance of any obligation hereunder..."). Therefore, there is a presumption of arbitrability.

The parties' intent evidences a valid agreement to arbitrate. The arbitration clauses show that the parties intended to arbitrate claims relating to Good's silica crushing. Though the termination date of the agreements passed, the evidence shows that both parties intended any new agreement to contain an arbitration clause. During negotiations, the draft agreement contained an arbitration clause. Additionally, Hardie insisted that the jurisdiction remain

California, where it had agreed to arbitrate the service agreements. The fact that Hardie now seeks to avoid arbitration is at odds with its intent at the outset of his business relationship with Good.

This evidence suffices as "minimal indication" of the parties' intent to arbitrate, and thus evidences a valid agreement to arbitrate.

**C. Does the Agreement Encompass the Dispute at Issue?**

It does. Hardie's claims for breach of the 2009 Agreement, fraud, and WCPA violations fall under the arbitration clauses. Again, the language "relating to" evidences a broad arbitration agreement. Though Hardie does not allege breach of either service agreement, he alleges breach of the 2009 Agreement which is related to the previous service agreements. The 2009 Agreement was intended to rectify a breach of the 2006 service agreement at Stone Corral; Good crushed less silica than the amount for which it charged Hardie, charging more than the price agreed upon in the 2006 agreement.

Hardie's fraud claims are also "related to" the 2006 and 2008 service agreements. Hardie claims that Good overbilled him for silica crushing at Scatter Creek in 2012 after the 2008 service agreement expired. Hardie believes Good overbilled him because it charged him more than was agreed in the 2008 service agreement. Per the agreements, Good was to charge Hardie for only silica it crushed. Good ultimately charged Hardie for more silica than it actually crushed. Thus, Hardie's fraud claims are related to the 2008 Scatter Creek agreement.

Hardie's claims for violation of the WCPA are also "related to" the service agreements. Hardie alleges that Good's overbilling constituted misrepresentation and unfair or deceptive trade practices under the CPA. The same logic applied to Hardie's fraud claims applies here.

Hardie believes Good overbilled him because he was charged more than was agreed on in the 2008 service agreement.

Therefore, the arbitration clauses encompass all of Hardie's claims. Because both of the above questions were answered affirmatively, the FAA requires this Court to enforce the arbitration agreement.

In any event, this Court cannot say with "positive assurance" that the arbitration clauses are not susceptible of an interpretation that covers Hardie's claims. Thus, this Court cannot rule that Hardie's claims are inarbitrable.

## III. CONCLUSION

For the reasons explained above, Good's motion to compel arbitration is GRANTED. The Clerk will statistically terminate the case but the Court will retain jurisdiction for purposes of addressing any post-arbitration matters.

IT IS SO ORDERED.

Dated this 22nd day of July, 2013.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE